WENDEL FOUNDATION, Appellant, *v.* MOREDALL REALTY CORPORATION, Respondent.

240

Argued November 21, 1939; reargued January 24, 1940; decided March 5, 1940.

*Harold Harper, Benjamin A. Matthews* and *James E. Austin* for appellant. The tenant covenanted to pay further rent measured by the prevailing income tax rates applied to the fixed annual rent in accordance with an arbitrary standard which expressly disregarded the actual tax liability of the landlords. (*Old Colony Trust Co.* v. *Commr. of Internal Revenue,* 279 U. S. 716; *United States* v. *Boston & Maine R. R.,* 279 U. S. 732; *O' Neil Supply Co.* v. *Petroleum Heat & Power Co.,* 280 N. Y. 50.) Defendant's construction deprives the charities of the exemption the law designed for them and transfers the benefit of the exemption to the tenant as a pure windfall. (*Illinois Central R. R. Co.* v. *Decatur,* 147 U. S. 190; *German Society* v. *City of Philadelphia,* 9 Phila. 245; *Jetton* v. *University of the South,* 208 U. S. 489; *People ex rel. Muller* v. *Board of Assessors,* 93 N. Y. 308.)

*Milton R. Weinberger, Samuel Seabury, William Klein, Adolph Lund* and *Leopold Friedman* for respondent. If no tax was required to be paid upon the reserved rent, then under the lease defendant was not obliged to pay the sums provided in paragraph " Third." (*Wisser Oil Co.* v. *Ganfrank Holding Corp.*, 163 Misc. Rep. 357; *Ayer* v. *Bonwit*, 161 App. Div. 122; *Clark* v. *Coolidge*, 8 Kan. 133; *Soulard* v. *Peck*, 49 Mo. 477; *Scott* v. *Society*, 59 Neb. 571; *Neponsit P. O. Assn.* v. *Emigrant Ind. Sav. Bk.*, 278 N. Y. 248; *Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125; *Afgo Eng. Corp.* v. *State*, 244 App. Div. 395; 268 N. Y. 716; *Barkin Constr. Co.* v. *Goodman*, 221 N. Y. 156; *Little* v. *Banks*, 77 Hun, 511; 151 N. Y. 669; *Pollock* v. *Penn. Iron Works Co.*, 13 Misc. Rep. 194; 157 N. Y. 699; *Worthington* v. *Herrmann*, 89 App. Div. 627; *Russell* v. *Allerton*, 108 N. Y. 288.) The construction of the lease by the courts below is in harmony not only with the expressed intent of the parties but also with the rules of law applicable to the construction of a written lease. (*Columbus Spa, Inc.*, v. *Star Co.*, 216 App. Div. 218; *Moskowitz* v. *Diringen*, 48 Misc. Rep. 543; *Orr* v. *Doubleday, Page & Co.*, 223 N. Y. 334; *Auerbach* v. *Foster's Place, Inc.*, 128 Misc. Rep. 875; *Cohen* v. *Margolies*, 192 App. Div. 217; *Afgo Eng. Corp.* v. *State*, 244 App. Div. 395; 268 N. Y. 716; *Hopwood Plays, Inc.*, v. *Kemper*, 263 N. Y. 380; *Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125; *Farmers Loan & Trust Co.* v. *Park & Tilford*, 127 Misc. Rep. 59; *Crown Corset Co.* v. *Baumann & Co.*, 213 App. Div. 113; *Bernstein* v. *Smith*, 119 Misc. Rep. 34; 205 App. Div. 880.)

RIPPEY, J. On November 1, 1916, the surviving children, individually or as trustees under a deed of trust made by John G. Wendel (now deceased), were the owners of certain premises located on the southwest corner of Broadway and West Fifty-first street in the city of New York. The entire title ultimately vested on July 20, 1930, in Ella V. von E. Wendel. Miss Wendel died March 13, 1931, leaving a last will and testament by which she devised her residuary

estate (including the aforesaid property) to various charitable corporations. Upon Miss Wendel's death temporary administrators of her estate were appointed, entered upon the discharge of their duties and continued to act as such until June 29, 1933, when executors were appointed and entered upon the discharge of their duties as such. The surviving of those executors delivered possession of the premises to the residuary beneficiaries named in the will on August 8, 1934, as of June 29, 1934, subject to the lease hereinafter referred to and the power of sale contained in the will, who retained possession and were entitled to all income from the premises, due and becoming due to December 1, 1936. In the meantime and on May 16, 1935, the plaintiff was incorporated by an act of the State Legislature (Laws of 1935, ch. 947) to manage and liquidate the residuary estate. Plaintiff took title by conveyance dated December 1, 1936, from the surviving executors and residuary beneficiaries under the will of Miss Wendel and held title and became entitled to the income from the property, then due and to become due, until August 10, 1937, when the property was conveyed to the Stonehurst Land & Development Company, Inc., with an assignment of the lease thereon and sums due and to become due thereunder as rent, excepting and reserving, however, all sums due from the tenant under the lease or in arrears other than the fixed annual net rent reserved. Both the residuary beneficiaries under the will of Miss Wendel and plaintiff were exempt from payment of all income, excise and license taxes or duties of every kind (Laws of 1935, ch. 947, § 7; Tax Law [Cons. Laws, ch. 60], § 4, subd. 6; *People ex rel. Trustees Masonic Hall & Asylum Fund v. Miller*, 279 N. Y. 137; U. S. Code, tit. 26, § 103 [6, 14]).

On December 1, 1916, the owners of the premises above referred to leased the property to defendant by a written instrument, binding upon and enuring to the benefit of the parties, their heirs, administrators, executors, successors and assigns, for a period of twenty-one years, in which a net annual rental (for the period involved in this suit) of

$51,000 was reserved and the defendant also agreed to pay to the landlords, in addition to the rent so reserved and as additional rent, such sums each year as they might legally be required to pay on account of taxes (including income taxes), repairs, insurance, etc., arising out of their ownership of the property and the income derived therefrom.

Plaintiff brought this action to recover a sum equal to the amount of annual income taxes, not heretofore advanced by defendant, which it and the representatives and residuary legatees of Miss Wendel would have been compelled to pay on the annual net rental of $51,000 had they been subject to the payment of such taxes on the theory that such sums were due and payable as rent additional to the specified net annual rent reserved notwithstanding that the hypothetical taxes which the sum sued for represents were never and never could be legally imposed, levied or assessed against the landlords or exacted from them by any governmental authority and that none such were ever paid. By its answer, defendant put in issue certain material allegations of the complaint, and, in addition, set up two separate defenses and counterclaimed for moneys which it had erroneously paid to the representatives of the estate of Miss Wendel and to the residuary charitable corporate legatees and returned by them to plaintiff. Plaintiff moved at Special Term to strike the separate defenses and counterclaim from the answer. Defendant made a cross-motion to dismiss the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. Defendant's motion was granted, plaintiff's motion was denied. Thereupon judgment was entered dismissing the complaint and severing the action to continue the counterclaim. On appeal, the Appellate Division unanimously affirmed. The case is here by permission of this court.

The parties agree that the rights of the parties turn upon the construction to be placed on paragraph third of the lease. That paragraph, so far as material, reads as follows:

" *Third.* That the Tenant, its successors and assigns shall pay to the Landlords, their heirs, successors or assigns

in each and every year during the said term as further rent, a sum or sums of money equal to all the income, excise and license taxes or duties of every kind, additional and super as well as normal, extraordinary as well as ordinary, unforeseen as well as foreseen, that shall be imposed, levied or assessed in any such year upon the rent reserved by this lease or the income secured hereby from the demised premises, by any present or future law of the United States of America, or of the State of New York, or of any other public or governmental body whatsoever, having authority to impose, levy or assess the same (as though the said rent reserved were the only income belonging to the Landlords, their heirs, successors and assigns who for the purposes of the computation of the amount of any such taxes or duties hereunder are to be considered as one person), without the benefit to the Tenant, its successors or assigns, of any deductions or exemptions to which the Landlords, their heirs, successors or assigns may be entitled, * * * and the said sum or sums of money shall be payable to the Landlords, their heirs, successors or assigns not later than five days after the first day the latter are required by law to pay the income, excise, license taxes or duties on the said rents or income for such year to the collector or receiving agent thereof; * * * but it is understood and agreed that in any event the full amount of the rent reserved hereby shall be paid to the Landlords, their heirs, successors or assigns over and above the sum or sums of money required to be paid by the Tenant, its successors and assigns as further rent as aforesaid."

The wording of the clause seems fully and clearly to express the purpose and intention of the parties and their duties and obligations in clear and concise terms. Construction is solely for the court. The intention and purpose of the parties, if resort is needed to other portions of the lease, are clearly and certainly expressed. The intention must be found in the words used to express such intention (*Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125, 133). The only rent " reserved " by the landlords for the period

in question was $51,000 per year. That reservation as well as the distinction between rent reserved and other contingent sums which the tenant must pay if obligation was imposed on the landlords to pay and arising out of the tenancy is repeatedly referred to and made clear in various clauses of the lease. The purpose and intent are clearly expressed beyond successful contradiction to be that the landlords should receive a *net annual rental* of $51,000 under any and all contingencies, without any deduction for taxes, repairs, insurance, etc., and no more. Such an intention and purpose are expressed in the clause up for construction. In clause Two, relating to " taxes, charges, assessments and payments * * * of every kind and nature whatsoever," the parties say, " It being the intention of the parties hereto that the rent reserved hereby shall be received and enjoyed by the landlords, their heirs, successors and assigns *as a net sum*" so that they " shall be enabled to apply the same to their own use *without any diminution thereof by payment of any duty or tax.*" (Italics ours.) In at least nine other clauses of the lease are similar provisions relating to improvements, damage actions and expenses, building construction, violation by the tenant of various covenants of the lease and of governmental regulations as to use, repairs, insurance and the like where agreement is made to indemnify the landlords for expenditures necessarily made or required to be made by them *as additional rent.* It is clear that clause Third provides for indemnity only to the landlords against liability for taxes imposed and *only in the event* of the levy, imposition and assessment of such taxes and the requirement that the landlords pay the same. There is no obligation on the tenant to pay as further rent a sum equal to taxes that might be imposed were the landlords not exempt from taxation. The obligation of the tenant was to pay if and when the landlords were required to pay and not otherwise.

It is argued that the expression that the additional rent is payable " without the benefit to the Tenant, its successors

or assigns of any deductions or exemptions to which the Landlords * * * may be entitled " indicates a purpose to make the hypothetical taxes payable as additional rent regardless of any requirement on the part of the landlords to pay. It is safe to stand upon the wording of the written lease. If we take the words of the instrument to mean what they clearly say, it follows that the so-called exemption clause above quoted is consistent only with the requirement on the part of the landlords to pay taxes. It was immaterial who the landlords were, whether individuals or corporations, or what deductions or exemptions he or they might properly have in connection with income taxes to be paid. Unless such taxes were properly imposed and required to be paid, deductions and exemptions referred to are meaningless. But if and when income taxes were imposed, levied and assessed, then and then only did the parties remove from the realm of quibble and litigation the question of the amount to be paid as additional rent. As to that they said the additional rent to be paid is a sum equal to the amount of the tax imposed, levied and assessed without the benefit of any deductions or exemptions to which the landlords (taken as one) might be entitled. The above accords with the construction previously placed on the clause by the parties themselves.

Leases of the character of the one in question, where a fixed minimum rental is reserved and the tenant is required to pay as indemnity to the landlord, as additional rental, such sums as the landlord is required to pay as they arise out of and incidental to the ownership and leasing of the property, are not uncommon to men of business affairs. The parties to this lease were experienced in the practical business affairs of life. Any construction other than the one we have made would do violence to the language used and would be so refined and theoretical as to be unreal to men of business and practical affairs and lead to absurdity. We are not called upon to indulge in abstractions and unreality to remake the lease so as to impose obligations on the tenant that the parties never had in mind.

The mere fact, if it be a fact, that the tenant has heretofore on some occasions paid the tax as though actually imposed is of no force as affecting a practical construction that no obligation existed to pay the same (*Brainard* v. *N. Y. C. R. R. Co.*, 242 N. Y. 125; *Hopwood Plays, Inc.*, v. *Kemper*, 263 N. Y. 380).

The judgment should be affirmed, with costs.

LEHMAN, Ch. J. (dissenting). The owners of a parcel of real property at Broadway and Fifty-first street in the city of New York leased the property, in November, 1916, to the defendant for a term of twenty-one years. The tenant agreed to pay the " net yearly rent or sum of $51,000." The lease provided:

" *Third.* That the Tenant, its successors and assigns shall pay to the Landlords, their heirs, successors or assigns in each and every year during the said term as further rent, a sum or sums of money equal to all the income, excise and license taxes or duties * * * that shall be imposed, levied or assessed in any such year upon the rent reserved by this lease or the income secured hereby from the demised premises, by any present or future law of the United States of America, or of the State of New York, or of any other public or governmental body whatsoever, having authority to impose, levy or assess the same (as though the said rent reserved were the only income belonging to the Landlords, their heirs, successors and assigns who for the purposes of the computation of the amount of any such taxes or duties hereunder are to be considered as one person), without the benefit to the Tenant, its successors or assigns of any deductions or exemptions to which the Landlords, their heirs, successors or assigns may be entitled, with interest at the rate of six per cent per annum * * * and the said sum or sums of money shall be payable to the Landlords, their heirs, successors or assigns not later than five days after the first day the latter are required by law to pay the income, excise, license taxes or duties on the said rents or incomes for such year

to the collector or receiving agent thereof; * * * but it is understood and agreed that in any event the full amount of the rent reserved hereby shall be paid to the Landlords, their heirs, successors or assigns over and above the sum or sums of money required to be paid by the Tenant, its successors and assigns as further rent as aforesaid."

At the time the lease was executed the owners of the property, described in the lease as "the landlords" were Rebecca A. D. Wendel Swope, Mary Eliza Astor Wendel, Georgiana G. R. Wendel, Ella V. von E. Wendel; and Rebecca A. D. Wendel Swope and Mary Eliza Astor Wendel as trustees, under a deed of trust made to them by John G. Wendel, deceased. Ella V. von Wendel died in March, 1931. All the other owners of the property, named in the lease as "landlords," had died before her and at the time of her death she was the sole owner. By her last will and testament she left her residuary estate to fourteen charitable corporations.

In 1936 the premises leased to the defendant were conveyed to the plaintiff, a charitable corporation, incorporated by a special act of the Legislature to manage and liquidate the properties which passed to the legatees named in the residuary clause of Miss Wendel's will. The plaintiff conveyed the premises in 1937 to Stonehurst Land & Development Co., Inc, a New York corporation. From the date of Miss Wendel's death until the conveyance by the plaintiff in 1937, charitable corporations were entitled to receive the rent derived from the premises under the lease. Charitable corporations are not subject to an income tax under the "law of the United States of America, or of the State of New York or of any other public or governmental body whatsoever" and the defendant, for that reason, has refused to pay to the plaintiff, while it was the landlord, as "further rent," an amount measured, as it had been measured during the lifetime of Miss Wendel, in accordance with paragraph Third of the lease, by the amount of the income tax which would have been imposed upon the income derived from rents reserved under the

lease " (as though the said rent reserved were the only income belonging to the Landlords, their heirs, successors and assigns who for the purposes of the computation of the amount of any such taxes or duties hereunder are to be considered as one person), without the benefit to the tenant, its successors or assigns of any deductions or exemptions to which the Landlords, their heirs, successors or assigns may be entitled." The plaintiff in this action seeks to recover such "further rent." The problem presented is whether the defendant's obligation to pay as "further rent" a sum equal to an income tax so computed is subject to a condition that some tax, though computed in other manner, shall actually be imposed upon and payable by the landlord upon income derived from rents reserved under the lease.

We read the lease as a whole to determine the meaning and purpose of each paragraph of the lease. The rental reserved is the "*net* yearly rent or sum of $51,000." The implied obligation of the tenant to pay charges, which the landlord would otherwise be compelled to bear, is supplemented by obligations expressly assumed by the tenant in other paragraphs of the lease. These supplemental obligations, it is argued, are intended merely to carry out the clear intent of the lease to provide a net rental to the landlords of $51,000 under any and all contingencies. In paragraph Two the tenant assumes expressly an obligation to pay, in addition to the rent, all taxes, duties, charges, assessments and payments that might be imposed upon the premises, or the estate or interest of the landlord therein or "*upon the rents reserved by the lease;*" and the reason why the tenant assumes that obligation is stated: " * * * it being the intention of the parties hereto that the rent reserved hereby shall be received and enjoyed by the Landlords, their heirs, successors and assigns as a net sum, and that the Tenant, its successors and assigns, shall pay any and all taxes imposed thereon, or upon the payment or devolution thereof, or upon such rents after they shall have been received by the Landlords, their heirs, successors

and assigns, and as *long as they retain their legal identity as rent,* in such manner that the Landlords, their heirs, successors and assigns shall be enabled to apply the same to their own use without any diminution thereof by payment of any duty or tax." (Italics are new.) We are told that the object of the provisions of both paragraphs Two and Three is solely to assure the landlords that the rent of $51,000 would be received by them as a net sum approximately tax free.

Undoubtedly that is the object of paragraph Second and it accomplishes that object. When the obligations assumed by the tenant in that paragraph were carried out, the landlords received the rents as a net sum and in such manner that they were " enabled to apply the same to their own use without any diminution thereof by payment of any duty or tax." The sums received as rent by the landlords then lost their identity and became part of the general income of the landlords. Those sums were then no longer taxable as rent. The income tax which the landlords might be compelled to pay might be increased because the rents received would increase the income and, therefore, might increase the tax payable on such income; but the tenant never agreed in paragraph Third or any other paragraph of the lease to pay such increase.

It is concededly impossible to give a literal effect to all the words of paragraph Third. The tenant, in terms, agreed that it shall pay " as further rent, a sum or sums of money equal to all the income, excise and license taxes or duties * * * that shall be imposed, levied or assessed * * * upon the rent reserved by this lease or the income secured hereby from the demised premises, by any present or future law of the United States of America, or the State of New York; * * * and the said sum or sums of money shall be payable * * * not later than five days after the first day the latter are required by law to pay the income, excise, license taxes or duties on the said rents or income." The provisions of the same paragraph, which amplify the obligation and define the manner in which

the sum or sums shall be computed, which the tenant must pay as further rent, make clear, however, that, in truth, the sum or sums of money which the tenant agreed to pay are not equal to a tax on the rents or income which the landlord is actually required to pay but a sum equal to a tax computed on a theoretical and impersonal basis, which might be much less or much greater than the amount which any actual landlord would pay.

Rents received from real property by a landlord who is subject to income taxes under the laws of the United States and of the State of New York form a part of the base upon which the amount of such income tax is calculated. Nevertheless, no tax is imposed separately upon the income or profits derived from specific property; the tax is solely upon the aggregate of all the net income received by the taxpayer after deducting the amount of losses and expenses incurred by the taxpayer, and after making allowance for the exemptions to which he is entitled. The rate of any tax imposed upon the landlord is determined, not by the amount of rent received, but by the amount of the entire net income of the landlord, and where losses or expenses of the landlord incurred through ownership of other property or transactions in nowise connected with the ownership of the demised real property exceed all the income received, including rents from the demised property, no tax is payable by the landlord. The parties might have agreed that the tenant would pay the proportion of any income tax imposed upon the landlord which the amount of the rents received bears to the entire income of the landlord or that the tenant would pay the amount by which the landlord's income tax is increased through receipt of rentals from the demised property. They have not done so. The amount which the tenant agrees to pay in addition to the fixed annual rental bears no substantial relation to any actual income tax which the landlord might be compelled to pay. What the tenant has agreed to pay is an amount computed upon a theoretical basis which excludes the most important factors which would measure the amount of any tax which

the landlord in fact would pay upon the income of which the rents would be a part. The real landlords were several persons; the fictitious landlord was one person. The real landlords might have great incomes outside of the rents of the demised premises; or, on the other hand, expenses incurred or losses suffered by the landlords in transactions not connected with ownership of the demised property, might exceed those rents, and the landlords might have no net income subject to tax. The fictitious landlord had no income other than the rents reserved in the lease. The real landlords would be entitled to deductions and exemptions, but such deductions and exemptions, the parties stipulated, must be disregarded in computing the amount which the tenant was to pay.

Though the amount which the tenant has agreed to pay as further rent is not the amount of the tax or of any fractional part of such tax which might be imposed in fact upon the landlord, but is merely an amount computed according to a formula defined in the lease, which incorporates by reference the provisions of the income tax laws, and though the definition of that formula expressly prescribes that the computation shall be made without allowing the " benefit to the tenant, its successors or assigns of any deductions or exemptions to which the landlords, their heirs, successors or assigns may be entitled," we are told that the obligation which the tenant assumed under the provision of paragraph Third of the agreement is conditioned upon the imposition of some income tax upon the landlord, and becomes payable only five days after the tax actually imposed upon the landlord becomes payable.

That construction would have the strange result that, though the parties indisputably agree that in computing the amount which the tenant must pay, the tenant should be without benefit from any exemption to which the landlord might be entitled *in reduction of the tax* to which the landlord is subject, yet where the landlord is entitled to *complete* immunity from any tax, the tenant obtains the full benefit of that immunity. If, reading the lease as a

whole, it appeared plainly that the dominant purpose of paragraph Third was to provide for the landlords some indemnity or protection against the income taxes which the landlord will be required to pay, then to effectuate that purpose, a construction might be placed upon the language of paragraph Third which would otherwise seem strained. The fact, however, that the amount which the tenant undertook to pay in accordance with the agreed formula bears little, if any, relation to the income tax which the actual landlord must pay, and the fact that it was expressly agreed that the tenant should receive no benefit in such computation from any deduction or exemptions to which the landlord might be entitled, indicates that this was not the dominant, and certainly not the sole, purpose of the provision. In clearest terms, the parties agreed that the obligation of the tenant should be fixed regardless of the personality or the deductions and exemptions to which the landlord might be entitled.

The landlords exacted from the tenant an express promise to pay a net rent or sum of $51,000 and *further rent* measured by an income tax computed upon a purely impersonal basis. The tenant voluntarily agreed to assume that obligation, which, because computed on an impersonal basis, was concededly not intended to vary with change in the person of the landlord but which, it is said, might cease to exist by reason of such a change. Tax exempt securities are a much more desirable form of investment for an investor with a very large income than property which brings the same income where such income must be included in the base upon which an income tax is levied. The comparative value is measured by the rate of taxation. The disparity increases with every increase of tax and diminishes with diminution in the amount of a tax. Doubtless the landlords, in exacting a sum as "further rent" equal to an income tax computed upon an impersonal basis, had in mind such considerations and sought compensation for such disparity; but that does not mean that the parties intended that a landlord who was not subject to

any income tax would not be entitled to the further rent which the tenant agreed to pay.

Such a construction would, I think, disregard those practical considerations which govern people in their business dealings. Because the original landlords were subject to an income tax, an investment in real property bringing in a rental of $51,000 would be much less valuable to them than an investment in tax exempt securities bringing in the same return; but tax exempt securities bringing in such return would probably also cost much more. The landlords might not be able to exact as further rent a sum equal to the additional tax which a landlord having other large income would pay but the landlords would and did exact as further rent a sum equal to the income tax which a landlord having no other income would pay. Real property on which a tenant will pay a net rent or sum of $51,000 and as further rent a sum equal to the income tax, computed as provided in the lease, will, it is plain, have more value than real property upon which only a net rent of $51,000 is paid; and the owner of the property should be able to transfer that value to any person to whom the property is transferred. Under the construction urged by the defendant, a transfer of the real property to a natural person would carry with it the right to further rent equal to the income tax imposed by the laws of the State of New York and of the United States, for the income of a natural person is subject to the tax imposed both by the State and by the United States. A transfer to a business corporation would not carry with it a right to further rent equal to the income tax imposed by the laws of the State of New York, for only natural persons are subject to the income tax imposed by the State of New York; and a transfer, as here, to a charitable corporation, exempt under the laws of the United States, would not carry with it a right to any further rent for such a corporation is not subject to any income tax imposed by either the United States or the State of New York. Thus the benefit and the burden of the lease would vary with the person of the

landlord and no corporation which is not subject to an income tax could afford to buy or hold the property, for it would be much more valuable to a landlord subject to the tax than it would be to a landlord whose income is immune from taxation.

The judgment of Special Term and the Appellate Division should be reversed and the motion of the plaintiff to strike out the defenses and counterclaims should be denied, with costs in all courts.

LOUGHRAN, FINCH, LEWIS and CONWAY, JJ., concur with RIPPEY, J.; LEHMAN, Ch. J., dissents in opinion, in which SEARS, J., concurs.

Judgment affirmed.