PARK SQUARE GARAGE, INC., Plaintiff, *v.* NEW YORK UNIVERSITY, Defendant.

First Department, May 25, 1967.

*Herman M. Glassner* of counsel (*Lilburn S. Rogers* with him on the brief; *Carb, Luria, Glassner & Cook,* attorneys), for plaintiff.

*William C. Porth* of counsel (*Roger K. Soderberg* with him on the brief; *Miller, Montgomery, Spalding & Porth,* attorneys), for defendant.

McNALLY, J. In this action on submitted facts there is presented the question of plaintiff tenant's liability for additional rent. Plaintiff is in possession of a subsurface parking facility located in the area known as Washington Square Village. The lease therefor, dated November 6, 1958, is for 15 years, commencing January 10, 1959. The annual rental is $115,000.08, plus a percentage of annual gross income. The tenant is also required to pay as additional rent the increase over the base year of real estate taxes in respect of the leased premises. The original tenant assigned the lease to plaintiff. Defendant purchased Washington Square Village on December 20, 1963.

Washington Square Village is a single plot covering three square blocks, improved with two 16-story apartment buildings. The leased premises are within said plot, which is Block 533, Lot 1, on the tax map of the City and County of New York. The leased area constitutes about one fifth of the entire plot.

The leased area is not separately assessed. The entire plot is assessed as one unit, and the buildings and improvements are assessed in the aggregate. The lease provides for the apportionment of any increase in real estate taxes over the base year in the event the leased premises are not separately assessed.

In such case, plaintiff's share of the increase of land tax is determined by the ratio of surface area of the leased premises to total surface area. In addition, plaintiff is required to pay 12% of the increase in taxes in respect of the buildings.

Since its acquisition of Washington Square Village, defendant has utilized residential portions for housing of its faculty and students, as well as offices. Said uses qualified the portions involved for tax exemption under section 420 of the Real Property Tax Law. Defendant applied for and was granted exemption from the real estate tax on the portions so utilized.

No part of plaintiff's premises is within the exempt portions. If plaintiff's garage premises had been on a tax lot within and apart from the rest of Washington Square Village and separately assessed, plaintiff unquestionably would be liable for the increased real estate tax thereon. In such case, defendant's partial exemption would have no bearing on plaintiff's liability therefor. The lease does not relieve plaintiff from payment of the increased real estate tax because the leased portion is not separately assessed. On the contrary, the lease provides plaintiff's obligation shall continue even though the leased premises are not separately assessed, and sets out the formula for allocation of the increased tax.

There is no ambiguity as to the expressed intent. It is that plaintiff pay the increase in real estate taxes " payable on the leased premises ". The land assessments and tax rates for the years involved exceeded those for the base year. Since no part of plaintiff's leased premises is exempt from real estate tax, the tax exemption extended to defendant is irrelevant on plaintiff's obligation to pay the increased real estate tax " on the leased premises." Moreover, if plaintiff prevails, it will be the beneficiary of an exemption intended solely for nonprofit organizations and a diversion of public moneys to the plaintiff, a business corporation. The formula set out in the lease for allocation of the increased real estate tax should be applied as if there had

been no exemption and as set out in Exhibit "D" of the submission.

Plaintiff's reliance on *Wendell Foundation* v. *Moredall Realty Corp.* (282 N. Y. 239) is misplaced. There the tenant was required to pay as additional rent the income taxes of the landlord arising out of the ownership of the property and the income therefrom. The landlord was a charitable corporation exempt from income taxes. In *Wendell,* the additional rent sought was sought to be measured by a hypothetical income tax. Here, the increased taxes are a reality and not hypothetical because the leased premises were subjected to higher assessments and tax rates and the increased tax on the leased premises is unaffected by the exemptions granted as to portions of defendant's property not within the leased premises.

The defendant is entitled to judgment as provided in paragraph "24" of the submission, with costs. Settle judgment.

CAPOZZOLI, J. (dissenting). It is settled law that, in the absence of a specific provision in a lease providing otherwise, the burden of paying taxes is on the landlord. (*Black* v. *General Wiper Supply Co.,* 305 N. Y. 386, 392.) In this case we find that the lease does make provision for payment of taxes by the plaintiff under certain conditions. Therefore, it is necessary to refer to the particular provisions of the lease which deal with this subject and ascertain therefrom what was the intention of the parties, for that is what controls.

Article X of the lease, in pertinent part, provides as follows: "In the event the real estate taxes, as hereinafter defined, payable on the leased premises during the third lease year, as hereinafter defined, shall in any subsequent lease year be greater in amount, the Tenant shall pay to the Landlord as additional rent for each subsequent lease year an amount equal to such increase in real estate taxes. In the event the leased premises are not separately assessed for the purpose of real estate taxes the increase in real estate taxes shall be computed and payable as hereinafter stated."

Said article then further provides that, in the event of a tax increase on the total land area, the tenant should bear his proportionate share based on the land area and that "Tenant shall pay to the Landlord such pro rata portion of the increase in real estate taxes as shall be determined by the application of such ratio to the amount of the increase in such real estate taxes *paid by the Owner* * * * of the said larger land area with which the land embraced in the leased premises or part thereof may be assessed." (Emphasis added.)

Similarly, in the following paragraph, it is provided that the tenant's portion be based on " the amount of the increase in real estate taxes *paid by the respective owners* " (emphasis added).

Nowhere in article X, nor elsewhere in the lease, is there any indication that the parties contemplated that, at any time during the 15-year term of the lease, there would be an exempt status applicable to any then landlord. Had this been contemplated, it would have been a very simple matter to draft appropriate language to cover the contingency. The language used in article X refers to taxes actually *paid* by the defendant landlord.

" In the case of doubt * * * the tax clause should be construed most strongly against the lessor and most favorably to the lessee." (51 C. J. S., Landlord and Tenant, § 360, p. 1055.) It is conceded that no increase in taxes was actually paid. It would require a rewriting of the lease to fix upon the plaintiff the obligation to actually pay that which defendant might have had to pay if it were not exempt. Certainly, we cannot " remake the lease so as to impose obligations on the tenant that the parties never had in mind ". (*Wendel Foundation* v. *Moredall Realty Corp.*, 282 N. Y. 239, 246.) This is especially so where, as here, the defendant, by reason of its tax exemption, is not paying any increase over the amount of taxes actually paid by the prior nonexempt landlord for the " Lease Base Year ".

I therefore dissent and vote to award plaintiff judgment, as provided in *paragraph " 23 "* of the submission.

EAGER and BASTOW, JJ., concur with McNALLY, J.; CAPOZZOLI, J., dissents in opinion in which, STEVENS, J. P., concurs.

Judgment for defendant as provided in paragraph " 24 " of the submission, with $50 costs and disbursements. Settle judgment.