■ RAN FIRST ASSOCIATES, Appellant, v 363 EAST 76TH STREET CORPORATION, Respondent. [747 NYS2d 13]

Plaintiff tenant commenced the instant action against defendant landlord seeking recovery of $20,898.17 in rent overcharges based on the landlord's alleged miscalculation of additional rent for the years 1997-2000, pursuant to the parties' commercial lease. Plaintiff leased ground-floor commercial space in the building, which otherwise is a residential

---

cooperative. The parties' lease includes a tax escalation clause which provides, in pertinent part: "In the event that the amount of real estate taxes * * * assessed against the Land and the Building owned by Landlord * * * attributable to any fiscal tax year * * * during the term of this Lease after the base year [fiscal year July 1, 1989 to June 30, 1990] * * * shall be greater than the amount of real estate taxes on the real property attributable to the base year, then Tenant shall pay to Landlord, as Additional Rent, 5.5% of the increase in real estate taxes on the entire real property for such tax year over the amount of such actual real estate taxes attributable to the base year."

It is undisputed that in calculating the additional rent owed by tenant in the years covered by the complaint, landlord has added to "the amount of real estate taxes * * * assessed against the Land and the Building owned by Landlord" the aggregate sum of certain tax exemptions or abatements, which correspondingly increased the additional rent owed by the tenant for each of these years. Tenant argues that by adding the amount of the tax exemptions/abatements to the landlord's actual tax obligations for the individual years, landlord required it to pay additional rent in excess of the 5.5% required by the lease.

In its complaint filed March 9, 2001, tenant asserted a cause of action for breach of contract for the amounts the landlord overcharged for the years 1997-2000. Tenant's second cause of action sought a declaration that, for purposes of the tax escalation provision, real estate taxes on the entire real property "shall not be increased" by the amount of any tax abatements or exemptions afforded the landlord on all or any portion of the property.

Tenant moved for summary judgment, arguing that under the terms of the lease, landlord should have calculated additional rent based on the actual real estate taxes owed, not the taxes landlord "hypothetically" would have owed had it not been entitled to certain tax abatements. In opposition, landlord argued, inter alia, that tenant was attempting to claim the advantage of tax relief that only the individual homeowners, not tenant, qualified for. In addition, landlord noted that since any tax relief from the abatements was passed through to qualifying homeowners by reductions in their maintenance, it would not be receiving any windfall if its position were upheld.

The IAS court granted tenant's motion for summary judgment in part, ruling that the amount of a J-51 tax abatement should not have been included in the calculation of additional

rent since this abatement "belongs to the Coop and reduces its real estate taxes." However, with respect to the other tax abatements, the court denied summary judgment finding that "[landlord] has shown that these tax benefits do not belong to the Coop, and that after the pass through of the benefits to the shareholders, the net benefit realized by the Coop is zero."[1] The court further stated that unlike the situations in *S.B.S. Assoc. v Weissman-Heller, Inc.* (190 AD2d 529) and *Fairfax Co. v Whelan Drug Co.* (105 AD2d 647), landlord here was "not reaping a windfall by charging [tenant] for tax escalations based upon the assessed tax."

A reversal is required as the IAS court's determination conflicts with the express terms of the parties' lease. The tax escalation clause clearly and unambiguously requires the tenant to pay 5.5% of the amount by which the real estate taxes on the entire property exceeds the real estate taxes in the base year. The escalation clause defines "real estate taxes" as "taxes, assessments, duties, charges, fees or payments levied, assessed or imposed upon the real property by state or local governments."

Significantly, this definition does not include the amount of tax exemptions or abatements. Moreover, calculation of additional rent under the tax escalation provision, as written, does not depend on whether or not a specific tenant is entitled to benefit from a particular exemption or abatement, as landlord suggests it should.[2] A court may not rewrite the terms of a contract in order to reflect the real intention of the parties where to do so would contradict the clearly expressed language of the contract (*see Rodolitz v Neptune Paper Prods.*, 22 NY2d 383, 386).

*Park Sq. Garage v New York Univ.* (27 AD2d 460, 461), cited by both parties, does not support landlord's position. In *Park Square*, this Court held that a landlord's exclusion of a tax exemption in determining a commercial tenant's additional rent was proper where the lease clearly provided that the com-

---

**1.** The other abatements include the school tax relief exemption ([STAR] RPTL 425), veterans' exemption (RPTL 458), cooperative/condominium abatement (RPTL 467-a) and the senior citizen rent increase exemption ([SCRIE] RPTL 467-b; Administrative Code of City of NY § 26-509).

**2.** We reject landlord's argument that because the residential tenants of the co-op are statutorily deemed the owner of their unit for purposes of the tax exemptions/abatements, the tax relief provided by these exemptions/abatements falls outside the definition of taxes assessed against the land "owned by the landlord" and should not be considered in determining tenant's additional rent. The statutory provisions at issue serve an entirely different purpose and cannot override the express provisions of the parties' lease.

mercial tenant was required to pay the increase in real estate taxes on "the leased premises," and the exemptions, which extended to only the noncommercial portions of the property, did not apply to the leased premises. Here, in contrast, the tax escalation clause of the parties' lease was not limited to increased real estate taxes on the leased premises, but rather covered increased taxes on the entire property.[3]

Enforcing the lease escalation clause as written is consistent with well-settled law that such clauses are "meant to provide relief for the landlord where 'assessed' tax required actual payment." (*Fairfax Co. v Whelan Drug Co.*, 105 AD2d at 648; *see also 1100 Ave. of Ams. Assoc. v Bryant Imports*, 234 AD2d 101, 101-102; *S.B.S. Assoc. v Weissman-Heller, Inc.*, 190 AD2d at 529.)

Landlord's attempt to distinguish these cases on the ground that it would not be receiving any windfall in this case because the tax relief was passed through to qualifying shareholders is unavailing. Although the IAS court correctly stated that the net benefit of the subject abatements to the landlord is "zero," the same cannot be said for the collection of additional rent by landlord based on taxes that have not been paid by it. To permit landlord to collect additional rent based on taxes forgiven by the taxing authorities, and therefore not payable by either the landlord or the shareholders, would allow the landlord to reap a windfall not envisioned by, and contradictory to, the parties' agreement (*see S.B.S. Assoc. v Weissman-Heller, Inc.*, 190 AD2d at 529-530). Nor is tenant obtaining a windfall by our holding, as landlord suggests, since tenant does not receive the benefits of those exemptions/abatements for which it does not qualify, and its additional rent is based on the actual taxes paid by landlord.

However, in granting summary judgment to tenant, we accept its concession in its brief that the correct amount of the overcharge is $19,382.10, not $20,898.17 as demanded in its complaint. Concur—Mazzarelli, J.P., Lerner, Rubin, Marlow and Gonzalez, JJ.

---

**3.** To the extent the Second Department's memorandum decision in *Whitman Owner Corp. v 75 Henry St. Garage* (56 AD2d 867, *lv denied* 42 NY2d 810) is to the contrary, we decline to follow it. We also note that the decision does not include a description of the exact terms of the parties' lease.