[926 NE2d 231, 899 NYS2d 724]

BARNAN ASSOCIATES LLC, Respondent, v 196 OWNERS CORP., Appellant.

Argued February 9, 2010; decided March 25, 2010

### APPEARANCES OF COUNSEL

*Abrams Garfinkel Margolis Bergson, LLP*, New York City (*Barry G. Margolis* of counsel), for appellant.

*Michael B. Kramer & Associates*, New York City (*Michael B. Kramer, Rubin Jay Ginsberg* and *Morgan E. Downer* of counsel), for respondent.

### OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be reversed, with costs, and the order of Supreme Court reinstated.

Plaintiff Barnan Associates LLC is a commercial tenant on the ground floor of a cooperative apartment building owned by defendant 196 Owners Corp., and located at 196 East 75th Street in New York City. In 1979, prior to the building's cooperative conversion, Barnan entered into a lease agreement with then landlord, nonparty Robert Olnick Associates. The parties agreed that Barnan would pay "Fixed Net Rent" and "Additional Rent based on Increase in Real Estate Taxes," as a commercial tenant of the building. The lease states in relevant part:

> "The Tenant agrees to pay to the Landlord as additional rent during each lease year subsequent to the New York City real estate tax year commencing July 1, 1979 and ending June 30, 1980, Fourteen and one-half (14 1/2%) percent of the dollar amount of any increase in such real estate taxes on the said land, buildings and improvements (of which the demised premises are a part) over and above the 'base amount of real estate taxes,' whether such increase in real estate taxes shall be occasioned by an increase in assessed valuation or an increase in tax rate, or both."

The parties defined the following words:

> " 'base assessed valuation' shall be the total fully assessed valuation (made without regard or giving effect to any exemption or abatement) of the parcel of [the subject land] for the New York City real estate tax year commencing July 1, 1979 and ending July [*sic*] 30, 1980; . . .

> " 'base tax rate' shall be the real estate tax for the Borough of Manhattan for the New York City real estate tax year commencing July 1, 1979 and ending June 30, 1980; . . .

> "[and] 'base amount of real estate taxes' shall be the dollar amount computed by and resulting from the application of the 'base tax rate' to the 'base assessed valuation.' "

Accordingly, Barnan has paid 14 1/2% "of the dollar amount of any increase in such real estate taxes" on the premises for the subsequent tax years.

Sometime after the lease was executed, Robert Olnick Associates sponsored the building's cooperative conversion. As a result of the conversion, 196 Owners Corp., a cooperative corporation, was created. By 1981, the corporation was the building's owner and successor landlord of the lease. More than a decade later, the State of New York enacted certain tax benefit programs targeting condominium owners and cooperative tenant-shareholders. Since the 1998-1999 tax year, tenant-shareholders in the subject building have availed themselves of certain tax benefit programs, pursuant to Real Property Tax Law §§ 425 and 467-a, which come in the form of tax abatements and exemptions. The City of New York calculates these abatements and exemptions and directs payment from the building's real estate tax assessment, which the corporation pays to tenant-shareholders directly.

In 2005, Barnan became aware that, since the 1998-1999 tax year, its yearly 14$^1$/$_2$% tax share of the building's billable taxes included the tenant-shareholders' tax abatements and exemptions. Barnan has since claimed that the corporation overcharged it in tax rents as the corporation failed to deduct the tax abatements and exemptions paid to the tenant-shareholders from its proportionate tax liability. Barnan demanded reimbursement, and the corporation refused. In 2006, Barnan commenced this action against the corporation for, among other things, reimbursement of the alleged overcharges. Barnan contends that the lease between the parties entitles it to deduct from its tax rents the tax abatements and exemptions that the corporation pays to the individual tenant-shareholders.

Supreme Court granted defendant's motion for summary judgment dismissing the complaint. It found that the tax escalation clause of the lease agreement was ambiguous as to whether tax abatements and exemptions should be excluded from the amount of real estate taxes assessed against the property and relied upon "the course of conduct of the parties since the defendant acquired title to the Building" (15 Misc 3d 1133[A], 2007 NY Slip Op 50962[U], *4 [2007]). The Appellate Division unanimously modified, on the law, by granting plaintiff's motion for summary relief, directing judgment in favor of plaintiff in the sum of $56,675.77, and denying defendant's cross motion (*Barnan Assoc. v 196 Owners Corp.*, 56 AD3d 309 [2008]). The court rejected Supreme Court's finding of ambiguity and application of the voluntary payment doctrine, and concluded that the result below was contrary to cases involving tax escalation clauses (*id.* at 311).

The terms of the lease determine whether Barnan is entitled to deduct the relevant tax abatements and exemptions from its tax rents (*Raleigh Assoc. v Henry*, 302 NY 467, 474 [1951]; *see also Fairfax Co. v Whelan Drug Co.*, 105 AD2d 647 [1st Dept 1984]; *Park Sq. Garage v New York Univ.*, 27 AD2d 460 [1st Dept 1967]). Here, the tax escalation clause unambiguously states that the additional tax charged to Barnan applies to "any increase in such real estate taxes" on the land greater than the "base amount of real estate taxes." In addition, the base amount is determined with reference to the "base assessed valuation"—a term that the lease requires be calculated "without regard or giving effect to any exemption or abatement." Thus it would be illogical to give effect to exemptions and abatements in calculating the "increase in *such* real estate taxes" and the resulting escalation. Moreover, in this case, the tax benefit programs did not decrease the corporation's tax liability (*cf. Fairfax Co. v Whelan Drug Co.*, 105 AD2d 647 [1984] [the tenant was not required to pay additional taxes to the landlord pursuant to the tax escalation clause because the actual property tax reduced by more than 50%]). Accordingly, the corporation properly increased Barnan's rent pursuant to the tax escalation clause by 14$\frac{1}{2}$% of the increase in real estate taxes, including the amount the corporation was required to pay to the eligible tenant-shareholders pursuant to the tax benefit programs.

Judges CIPARICK, GRAFFEO, READ, SMITH, PIGOTT and JONES concur in memorandum; Chief Judge LIPPMAN taking no part.

Order reversed, etc.