**City of New York v Crest Hous. Co. LLC**

2025 NY Slip Op 31670(U)

May 6, 2025

Supreme Court, New York County

Docket Number: Index No. 452282/2022

Judge: Nicholas W. Moyne

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT: **HON. NICHOLAS W. MOYNE** | PART 41M |
| *Justice* | |

-----------------------------------------------------------------------------X

THE CITY OF NEW YORK,

                    Plaintiff,

             - v -

CREST HOUSING CO. LLC,BETTER HOUSING CO. LLC,HPA HOLDING CO. LLC

               Defendant.

-----------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 452282/2022 |
| MOTION DATE | 05/01/2023 |
| MOTION SEQ. NO. | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 67, 68

were read on this motion to/for         SUMMARY JUDGMENT(AFTER JOINDER    .

Upon the foregoing documents, it is

Ordered that the defendants' motion for summary judgment dismissing the complaint and the affirmative defenses to the defendants' counterclaims is denied and, upon searching the record pursuant to CPLR § 3212(b), the court grants summary judgment to the plaintiff and dismisses the defendants' counterclaims and affirmative defenses.

On or about January 2, 2012, plaintiff and defendants entered into a lease for warehouse space in Long Island City. The lease contains a real estate tax escalation clause, which provides that, in addition to base rent, in any tax year, the plaintiff is obligated to pay a set percentage of the amount, if any, by which the amount of real estate taxes "assessed, levied or imposed" by the City's Department of Finance exceeds the amount of real estate taxes imposed on the building for the base tax year designated in the lease.[1] Under Article 4B, first Paragraph B of the Lease, in order for the City to become obligated to pay any tax escalation, the "Landlord shall give Tenant Landlord's statement therefor, together with a copy of the Taxes bill *showing that the Taxes have been paid.*" (Lease at p. 18) (NYSCEF Document No. 19) (emphasis added)

Since fiscal tax year 2011/2012, the defendants, as landlords, have benefitted from a real estate tax abatement under the Industrial and Commercial Abatement Program (the "ICAP Abatement"), which provides abatement of real estate taxes for certain commercial buildings. The amount of the ICAP Abatement is reflected on the real estate tax statements. The plaintiff

---

[1] Under Article 4B(A) of the Lease, the term "Real Estate Taxes" as used therein means the real estate taxes and assessments on or with respect to Subject Premises, which are "assessed, levied, or imposed" by any governmental authority having jurisdiction.

**452282/2022   THE CITY OF NEW YORK vs. CREST HOUSING CO. LLC ET AL**
**Motion No.  001**
         **Page 1 of 7**

1 of 7

claims that although the defendants have received the benefit of the ICAP Abatement by paying reduced taxes, they improperly included the amount of the ICAP Abatement in their calculations used to determine the amount due from the plaintiff as additional rent. The plaintiff maintains that the defendants should have calculated the plaintiff's real estate tax escalation due based on the amount the Department of Finance actually assessed, which is the amount the defendants actually paid, as opposed to the hypothetical or estimated amount that did not take into account the ICAP Abatement. As a result, the plaintiff maintains they have overpaid for additional rent in the fiscal years 2013 through 2022.

The complaint alleges two causes of action against the defendants. The first cause of action seeks a declaratory judgment that under Article 4B of the lease, the defendants were and are required to deduct the amount of the ICAP Abatement from the amount of the real estate taxes used to calculate the additional rent due under the lease. The second cause of action is for breach of contract based on the alleged overcharges and seeks reimbursement in an amount to be determined at trial. Defendants now move for summary judgment. The essential dispute in this case is whether the additional rent due under the real estate tax escalation clause should be calculated based on the amount the landlord actually pays in taxes for a particular year and excluding the amount the defendants are excused from paying as a result of the abatements awarded under the ICAP Abatement program. The plaintiff maintains that the answer is yes because otherwise the defendants would receive a windfall that was not provided or bargained for in the lease. The defendants maintain that they are entitled to additional rent based on real estate tax escalations as initially assessed by the Department of Finance, without taking into account the ICAP Abatement, even though that amount would exceed the plaintiff's proportionate share of the increase in the defendants' actual property tax obligation over the relevant base year amounts.

Summary judgment shall be granted if, upon all the papers and proof submitted, the cause of action or defense shall be established sufficiently to warrant the court as a matter of law in directing judgment in favor of any party (CPLR § 3212[b]). The proponent of a summary judgment motion, herein "moving party", must make a prima facie showing of entitlement as a matter of law, producing sufficient evidence to demonstrate an absence of any material issues of fact from the case (*see Pullman v Silverman*, 28 NY3d 1060, 1062-1063 [2016]). When a party has made a prima facie showing to entitle it to summary judgment, the burden shifts to the opposing party to show by evidentiary facts that a claim or defense is real and can be established at trial (*See Tatishev v City of New York*, 84 AD3d 656 [1st Dept 2011]; *Indig v Finkelstein*, 23 NY2d 728 [1968]; *see also Vogel v Blade Contr. Inc.*, 293 AD2d 376, 377 [1st Dept 2002]). In the event the moving party meets its burden, the evidence submitted by the non-moving party must be accepted as true, and the non-moving party must be given the benefits of all favorable inferences which may be drawn therefrom (*City Line Rent a Car, Inc. v Alfess Realty, LLC*, 33 AD3d 835 [2d Dept 2006]; *Demshick v Community Hous. Mgt. Corp.*, 34 AD3d 518, 520 [2d Dept 2006]; *Marine Midland Bank, NA v Dino & Artie's Automatic Transmission Co.*, 563 NYS2d 449 [2d Dept 1990]).

Under CPLR 3212(b), even in the absence of a cross-motion, upon searching the record, this Court may grant summary judgment to a party opposing a summary judgment

452282/2022   THE CITY OF NEW YORK vs. CREST HOUSING CO. LLC ET AL                     Page 2 of 7
Motion No.  001

2 of 7

motion on issues that are nearly identical to those raised in the motion. (*See, e.g., Stephen LLC v Zazula*, 171 AD3d 488, 489 [1st Dept 2019] [citations omitted]).

## DECLARATORY JUDGMENT

The first cause of action seeks a declaration that, under the tax escalation provision of the Lease, the defendants are entitled to additional rent each year for a tax escalation calculated **only** upon the tax amount that they actually paid in excess of the applicable base year amount, that is, after application of the ICAP Abatement. The defendants' First Counterclaim seeks the opposite declaration that the defendants may include in the calculation the annual ICAP Abatement amount, even though that amount was not included in the property tax that they actually paid for the year in question. (NYSCEF Document Nos. 33 and 34).

The purpose of a tax escalation clause in a lease is to afford relief to a landlord only where an increase in the assessment of the property causes the landlord to pay more in taxes than the previous year. (*see S.B.S Assoc. v Weissman-Heller Inc.*, 190 AD2d 529 [1st Dept 1993]; *Fairfax Co. v Whelan Drug Co.*, 105 AD2d 647, 648 [1st Dept 1984]). To allow a landlord to collect additional rent based on taxes forgiven by the taxing authority, and never paid by the landlord, would permit a landlord to reap a windfall not envisioned by, and contrary to the parties agreement (*see Wellington Tower Associates, L.P. v New York First Avenue CVS, Inc.*, 3 AD3d 460, 461 [1st Dept 2004], *appeal dismissed,* 3 NY3d 960 *[2004]; Ran First Associates v 363 East 76th Street Corp.*, 297 AD2d 506. 509 [1st Dept 2002]).

It is well-settled that under New York law, a tenant is not obligated to pay an increase in real estate taxes that the landlord is not obligated to pay unless the tax escalation clause on the lease provides for an unequivocal intent that the tenant make such payments ( *see Wellington*, 3 AD3d at 461). To allow otherwise would cause the landlord to reap the very type of windfall the law does not permit (*see id.*). In *Wellington Tower Associates*, the First Department rejected the landlord's argument that it was entitled to escalations calculated on a tax amount calculated without regard to an existing tax abatement, where the tax escalation provision defined "taxes" as "all real estate taxes or other governmental levies *assessed, levied or imposed* on the building or land 'without reduction for any abatement.'" (*Id*). (emphasis added). The First Department held that, "[r]ead as a whole," the tax escalation provision required the tenant to pay the landlord a reasonable estimate of escalations, without reduction for any abatements, at least thirty days in advance of the tax deadline, subject to later adjustment "in favor of [the] tenant for any inaccuracies in its [the landlord's] estimate or refunds it receives. "The result is that, ultimately, [the] tenant is to be credited for its proportionate share of any abatements obtained by [the] landlord."). (*Id).*

Here, the tax escalation provision in the lease , like the one in *Wellington Tower*, defines the taxes upon which the escalations are calculated as the amounts "assessed, levied or imposed" by the Department of Finance on the building and land. See Defendant's Exhibit B (Lease at pp. 16-17) (NYSCEF Document No. 19). The lease does not expressly provide for a calculation of the tax escalation based on the pre-abatement amount. Instead under the Lease, at the first Paragraph B and Paragraph C of Article 4B, the City must pay a tax escalation to the extent that

[* 3]

"the total annual Real Estate Taxes imposed or assessed upon the Land and Building" exceeds the amount of Real Estate Taxes "finally imposed or assessed upon the Land and Building" in the base year. See Defendants' Exhibit B (Lease at pp. 17-18) (NYSCEF Document No. 19) and City's Exhibits 21 and 22. There is nothing in the Lease that suggests that the parties meant by the "imposed or assessed" and "assessed, levied or imposed" language anything other than taxes that the Landlord actually paid, a meaning that is consistent with the purpose of the tax escalation provision and the public policy to avoid giving the landlord an unneeded windfall.

The Lease clearly and unequivocally indicates that the plaintiff's proportionate share of the tax escalations must be based on the amount the defendants actually pay in real estate tax. There is no other reasonable interpretation that would give effect to the entire language of the tax escalation provision. For example, under Article 4B, first paragraph B, the plaintiff's obligation to pay its share of tax escalations is contingent upon the defendants providing the plaintiff with semi-annual invoices for tax escalations accompanied by "a copy of the taxes bill showing that the taxes have been paid." See Defendants' Exhibit B (Lease at p. 18) NYSCEF Document No. 19). The fact that the defendants are required to provide proof of their actual tax payments, including tax bills reflecting receipt of those payments, is a clear indication that the plaintiff's share of the tax escalations are to be calculated based only on the amount the defendants actually pay in excess of the amount the defendants paid for the applicable base year.

Defendants' insistence that the ICAP Abatement amounts should be disregarded in calculating the plaintiff's share of the tax escalations is contrary to the express language of the lease. Defendants argue that Article 4B, Paragraph D if the Lease expressly entitles the plaintiff to a credit for any refund obtained by a reduction in the assessed valuation but is silent as to the entitlement of the plaintiff to receive a credit based on an abatement. This argument improperly turns the caselaw on its head and assumes the landlord is entitled to a windfall in the absence of a provision in the lease directing otherwise. As set forth above, the law is exactly the opposite and absent express language allowing the landlord to collect tax escalation payments based on amounts that were never actually paid, the landlord cannot obtain a windfall at the expense of the tenant. As the plaintiff points out, the relevant distinction is that a credit to the tenant as the result of the landlord receiving a partial refund after the assessment valuation is retroactively lowered is the result of the higher valuation no longer being applicable to the time period covered by the tax amount that the landlord already paid. That is sharply distinct from an abatement that reduces the tax amount due before the tax is actually billed to and paid by the landlord. In the former scenario, the landlord is required to pay the amount billed, but becomes entitled to a refund if, after the fact, the landlord's tax liability is reduced due to a retroactive reduction in the assessed valuation. But in the latter, the landlord is never required to pay the "pre-abatement" amount at all, and instead must pay only the amount actually billed, that is, after the abatement amount is deducted from the amount that otherwise would be due.[2]

Defendants' argument that the plaintiff is attempting to claim advantage of tax relief that is only available to property owners is unavailing. They claim that the tax escalation clause does

---

[2] This case is clearly distinguishable from the Court of Appeals decision in *Barnan Assoc. LLC v 196 Owners Corp.*, 14 NY3d 780 [2010]. In *Barnan*, the lease agreement unambiguously addressed abatements and stated within the four corners of the lease that tax valuation calculations would be made without regard to abatements. That is not the case here as the subject lease makes no mention of abatements.

452282/2022  THE CITY OF NEW YORK vs. CREST HOUSING CO. LLC ET AL          Page 4 of 7
Motion No. 001

4 of 7

not provide them with a windfall because it compensates them for the various expenditures they incurred in upgrading the building in order to qualify for the ICAP Abatement. This is the same type of argument rejected by the First Department in *Ran First Associates*. The Court in *Ran First Associates* held that, even if the benefits of the abatements to the landlord netted zero, the opposite is true for the landlord's collection of rent based on taxes that were not paid by the landlord. "To permit landlord to collect additional rent based on taxes forgiven by the taxing authorities, and therefore not payable by either the landlord or the shareholders, would allow the landlord to reap a windfall not envisioned by, and contradictory to, the parties' agreement" (*Ran*, 297 AD2d at 509).

Accordingly, the Court denies the portion of the defendants' motion seeking summary judgment dismissing the first cause of action and, after searching the record pursuant to CPLR §3212(b), grants summary judgment to the plaintiff on its first cause of action and dismisses the first counterclaim in its entirety. It is hereby declared that the defendants are entitled to additional rent for real property tax escalations calculated only upon the tax amounts that the defendants actually pay, after application of any abatements or credits including the ICAP Abatement amount.

The second cause of action is for breach of contract based on alleged overpayments under the lease and seeks recovery of damages based upon the overpayment. Defendants, in addition to arguing that there were no overpayments for the reasons outlined above, also maintain that any otherwise valid claims for breach of contract are time-barred by the statute of limitations. A breach of contract claim is subject to a six-year limitations period. See CPLR §213(2). Pursuant to CPLR §213(2), an action based on a contractual obligation or liability must be commenced within six years of accrual. In contract cases, the statute of limitations begins to run and the cause of action accrues when a contract is breached or one party fails to perform a contractual obligation. Plaintiff concedes that the statute of limitations bars its claims to the extent that they relate to rent overpayments made more than six years before it filed its complaint on August 9, 2022. Plaintiff contends, however, that its claims relating to overpayments made on or after August 9, 2022 are not time-barred because where a lease requires the payment of rent in installments the statute of limitations begins anew with each separate installment. It is well-established in New York that a cause of action for breach of contract or unjust enrichment arising from a series of installment payments accrues separately for each installment. (S*ee, e.g.*, *Phoenix Acquisition Corp. v Campcore, Inc*., 81 NY2d 138, 141–42 [1993]; *Vigilant Ins. Co. of Am. v Hous. Auth. of City of El Paso*, 87 NY2d 36, 45 [1995]). New York courts have consistently applied this rule to real property lease overcharge and nonpayment disputes. (*See, e.g., Walton v E. Analytical Labs, Inc*., 246 AD2d 532, 534 [2d Dept 1998]; *Arrathoon v E. N.Y. Sav. Bank*, 210 AD2d 366, 367 [2d Dept 1994]; *Woodlaurel, Inc. v. Wittman*, 199 AD2d 497, 498 [2d Dept 1993]; *Yeshiva Univ. Dev. Found., Inc. v Consultants & Designers, Inc*., 60 AD2d 525, 527 [1st Dept 1977]).

As set forth above, the plaintiff's tax escalations should have been calculated based upon the amount the defendants actually paid in taxes, taking into account the amount of the ICAP Abatement. Since the defendants overcharged the plaintiffs by disregarding the amount of the ICAP Abatement, they breached the lease by overcharging the plaintiff for real property tax escalations. Based on the formula contained in the lease and taking into account the statute of

[* 5]

limitations analysis discussed above, the plaintiff has demonstrated that it is entitled to recover 89.3% of its overpayments for the 2016-2017 tax year[3] and 100% of is overpayments for each subsequent tax year through 2022-202.  The total amount of damages the plaintiff is entitled to is $185,599.70 on its second cause of action.

The Court has considered the defendants' affirmative defenses and remaining counterclaims and finds them without merit.  Specifically, there are no facts in the record which would allow the Court to make any finding concerning wavier, estoppel or laches on the part of the plaintiff.  Nor is there any evidence that the plaintiff has unclean hands.  Accordingly, the court searches the record and finds that the plaintiff is entitled to summary judgment on its second cause of action for breach of contract for $185,599.70.

Accordingly, the motion for summary judgment by the defendants is denied.  Upon searching the record, the Court grants summary judgment to the plaintiff on its first cause of action for declaratory judgment.  It is hereby declared that the defendants are entitled to additional rent for real property tax escalations calculated only upon the tax amounts that the defendants actually pay, after application of any abatements or credits  including the ICAP Abatement amount.  The plaintiff is also entitled to summary judgment on its second cause of action for breach of contract in the amount of $185,599.70.  The defendants' counterclaims and affirmative defenses are dismissed.

It is ORDERED and ADJUDGED that the plaintiff is to serve a copy of this order with notice of entry upon the Office of the County Clerk, who is directed to enter judgment in favor of plaintiff, City of New York  and against defendants,  Crest Housing Co. LLC, Better Housing Co. LLC and HPA Holding Co. LLC in the amount of $185,599.70,  plus interest at the rate of 9 % per annum from the date of August 9, 2022 , and costs and disbursements, as taxed by the Clerk of the Court upon the submission of proper proof thereof; and it is further

ORDERED that plaintiff shall submit judgment directly to the Clerk of the Court, not chambers or the Part, unless otherwise directed by the Clerk of the Court; and it is further

ORDERED that any such service upon the Clerk of the Court shall be made in accordance with the procedures set forth in the Protocol on Courthouse and County Clerk Procedures for Electronically Filed Cases (accessible at the "efiling" page on this court's website).

This constitutes the decision and order of the court.

| 5/6/2025 | | | | NICHOLAS W. MOYNE, J.S.C. | |
| DATE | | | | | |

CHECK ONE:

| | X | CASE DISPOSED | | | NON-FINAL DISPOSITION | |
| | | GRANTED | | DENIED | GRANTED IN PART | X | OTHER |

___

[3] From August 9, 2016 through June 30, 2017, the end of the 2016-2017 tax year totals 326 days, or 89.3% (326/365) of that tax year.

452282/2022   THE CITY OF NEW YORK vs. CREST HOUSING CO. LLC ET AL          Page 6 of 7
Motion No.  001

6 of 7